And we will hear our first matter, Richardson v. Coverall. Good morning, Your Honor. Good morning. Norman Leon, the appellant, Coverall, North America. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. That will be granted. Thank you, Your Honor. We have several interesting arbitrability issues before the Court today. Unless the Court has a preference, what I would like to do is start with the incorporation by reference issue, specifically the district court's decision to incorporate a sophistication requirement into the delegability question and its apparent conclusion that Mr. Rivas was not sufficiently sophisticated to be bound by the terms of the AAA rules, which were incorporated into the party's arbitration agreement.  Thank you, Your Honor. There are two reasons that I'd like to touch on as to why that determination was correct. The first is that it's a legally improper requirement to impose. But I'd first like to touch on the factual record of the Court. That's true, even if they're unsophisticated. Correct, Your Honor. Even if they're unsophisticated. Even if they're unsophisticated, the AAA rules would be a valid requirement and sufficient evidence that the parties clearly and unmistakably delegated arbitrability questions to an arbitrator. But the first problem here is that there's no record of a lack of sophistication. The plaintiffs never argued that point in the Court below. The only arguments that they presented to the district court in opposition to our arguments on the incorporation of the AAA rules was that first, the Supreme Court of New Jersey in Morgan supposedly held that the incorporation of the rules was not sufficient, and it never came to that conclusion. In fact, the word incorporation doesn't even appear in Morgan. And secondly, to include the ---- But the words clear and unambiguous do. So could you just explain to me the point you just made of why it is that the incorporation of the rules themselves are sufficient indicia of a clear and unambiguous waiver under New Jersey law? Yes, Your Honor. We start with the proposition that under Rent-a-Center, a delegation clause, it's an arbitration agreement. And under Section 2 of the Federal Arbitration Act, an arbitration agreement needs to be judged just like any other contract. That's the central precept of Section 2. Under standard contract rules in New Jersey, generally applicable contract principles, terms that are incorporated by reference into a contract are treated just as if they're set forth in full in the contract. And under generally applicable contract rules in New Jersey, the party is bound by the terms in the contract, whether they read them or not, whether they understand them or not. In fact, in the Morales v. Sun Contractors decision, this Court held that an individual was bound by an arbitration agreement even though he couldn't read it, couldn't even understand the language. Now, if we apply those generally applicable contract principles in this case, we have an arbitration agreement that specifically, clearly, and unmistakably said that all questions regarding the scope, validity, and enforceability of the arbitration agreement would be resolved by an arbitrator. Why is it enough to say that it's clear and unambiguous just because New Jersey law would assume that the truncated term is spelled out in full when the New Jersey Supreme Court has also said that merely stating arbitration isn't enough to clearly and unambiguously give notice of what's being waived? In other words, how do you square those two doctrines of mutual consent? If merely invoking the phrase arbitration isn't clear and unambiguous, why would including the AAA rules be clear and unambiguous? Well, because enforceability can't hinge on a sophistication requirement because there is no one scope. Well, I agree with that, but that's not the question. You're arguing that there was mutual consent because the parties understood that this was going to be subject to arbitration. In part, arbitrability was going to be delegated because the AAA rules were incorporated. Fair enough. But the Supreme Court of New Jersey has said that merely saying subject to arbitration isn't enough to create a clear and unambiguous understanding of what the parties are entering into. So how do you square those two doctrines? I think those two doctrines are square drawn by the fact that the New Jersey principle that saying arbitration is not enough is preemptive, and I would submit patently so. In New Jersey, assent to enter into a contract is judged by a simple standard, and this Court recognized it very recently in the Ace American case. When a party enters into a signed written contract, that party is presumed to understand and assent to its terms unless fraudulent conduct is suspected. And there's no allegation of fraudulent conduct in connection with the execution of the agreement here. So by signing the agreement, we had assent to an arbitration clause. Under Section 2 of the FAA, that arbitration clause cannot be subject to any different principles governing the formation of contracts. And I'm happy to turn to the preemption issue that the Court would like to put to that right now.   So I think the Court's argument is that the contract must be signed. So just a quick case of leave that a question. It was on consent, because it seems to me that for the contract to be enforceable, the parties have to agree to its terms and consent to its terms. So to me, consent is an important aspect of the enforceability of a contract. But how do you consent if you don't understand the terms that you are assigning? Or is it your argument that consent should be implied by someone's signature? I don't think it's implied, Your Honor. I think that's the standard under New Jersey law. When you sign a contract, when you sign any contract under New Jersey law, unless there is an allegation of fraudulent conduct, your assent is presumed. You mean your signature is automatically you are consenting to the terms of the contract? Absolutely, Your Honor. That is the standard that governs all contracts. And by incorporating an additional requirement to arbitration agreements, the New Jersey Supreme Court has imposed requirements that don't apply to contracts generally. And, Your Honor, this is not breaking new ground. This is something that the Supreme Court has recognized for decades. We discussed in our brief the Dacus Associates v. Casarado case in which the Montana legislature, just like the New Jersey Supreme Court, adopted rules that required special notice. Do you think that case is distinguishable, though, counsel? I mean, that dealt with having an all bold, underlined at the top of the contract. It was a little bit specific to arbitration. Do you think that's the same as what the New Jersey Supreme Court's been doing? Absolutely, Your Honor. How? Because the principle is exactly the same. This is what the Supreme Court said in Casarado. Under Southland v. Perry, and I apologize, this is at page 687 of the opinion. Under Southland v. Perry, state legislation requiring greater information or choice in the making of agreements to arbitrate than in other contracts is preemptive. And that's exactly what the New Jersey principle stands for. You do not need to mention a specific language to enter into a contract in New Jersey. You need to sign it. You do not need to explain the meanings of terms in a contract to enter into a contract in New Jersey. You just need to sign it. Yet the New Jersey Supreme Court has instituted multiple requirements that only apply to arbitration agreements. And I know they've said that it's just to ensure that there's not. Well, how about – I mean, it started off with mentioning the Morgan v. Sanford Brown case. How does that apply here? I don't think it applies at all, Your Honor. In Morgan, the Court held that there was not sufficient evidence that the parties clearly and unmistakably delegated arbitrability questions to an arbitrator for two reasons. Number one, the issue had not been argued in the court below. So there was a waiver, and there's no allegation of that here. That was the first point in our brief in the court below. Secondly, the issue of incorporation didn't even come up. The Court rested its argument on its belief that the language of the arbitration agreement itself did not sufficiently delegate arbitrability questions because all it talked about was resolving things in arbitration under this agreement. There was nothing in there that specifically said scope validity or enforceability questions would be resolved by arbitration. Even though they also – I mean, very similar to this case in the respect that it referred to the AAA rules. I agree. It did refer to the AAA rules, but that was only one of two alternative set of rules. There was either the AAA rules or the National Arbitration Forum set of rules, and the concept of incorporation wasn't addressed by the Court anywhere. Your argument really minimizes the role of the district court judge in cases like this. I think that's the whole purpose of the delegation principle, Your Honor, that parties can validly send questions about the scope, validity, or enforceability of arbitration agreements to an arbitrator instead of a court if they clearly and unmistakably do so. So the Court can, in fact, say, did you sign the contract? If the answer is yes, that's it? Is that your view? If the arbitration agreement – Is that your signature on the contract? That's correct, Your Honor. Then you have a valid agreement. And if that valid agreement clearly and unmistakably says that any disputes you have about the arbitration agreement go to an arbitrator, that's all that you need to know. So that's your view of where the district court judge erred in this case by asking questions about the understanding of the terms of the contract as a whole? Yes, Your Honor. I'm quite positive. That's in my contract. Okay. We'll get you on rebuttal. Thank you. Thank you. Good morning. May it please the Court. Justin Santagada of Carlton-Semer, leaving for the co-appellant, Sujo, LLC. I would like to reserve one time for rebuttal, please. How much time? One minute. Okay. Wait, hold on. You only had a – how much time do you have total? I have four minutes total. Okay. That's fine. Thank you, Your Honor.  clause and argue that it's important to understand the language of the arbitration clause. I would argue that it meets the New Jersey standard. We agree with coverall that the standard should be preempted, but I want to make two points on the actual language itself. First of all, the only claim pledged in this case is the wage payment law claim. At least in this case, that claim is covered by the arbitration clause because the contract defines the relationship of the parties to include independent contracts of status, and the clause itself, the arbitration clause, says that a dispute over the relationship of the parties is arbitrable. We are not arguing that the clause would cover statutory claims, at least under the New Jersey standard, for all statutory claims. It might not cover the law against discrimination. It might not cover Title VII, but it covers this specific claim. And our position is simple, that the language in this clause is better than referencing a statutory claim because it gives the reader fair notice in a common-sense way of what's actually subject to arbitration. Under the New Jersey standard, it should be sufficient if the clause simply said, the relationship of the parties or any form of discrimination, which doesn't reference the statute itself, that should be sufficient to cover a statutory claim. So by the same token, referencing the relationship of the parties, when that is defined as independent contract of status, should be sufficient for this claim in this case. On the second issue, which I think is the bigger issue, which is whether the arbitration clause clearly and unmistakably tells the reader that they're giving up their right to go to court, you have to look at the length of this clause in relation to the trio of Supreme Court cases from New Jersey, Garfinkel, Martindale, and all police. This clause is nearly a page and a half in this case. It explains how arbitration works. It explains who picks the arbitrator. It explains that arbitration is confidential. No fair-minded person thinks that courts are generally secret. No fair-minded person thinks that you get to pick your own judge. So as a whole, we think the clause itself sufficiently gives the reader fair notice that they're giving up their right to go to court. And my final point, at least standing up here right now, is there was a case set in our brief, Cologne v. Logistics Service Group. The court should be aware that that case, which affirmed arbitration at the appellate division in New Jersey, is actually on certification to the New Jersey Supreme Court now. It was granted after a briefing was filed in this case. That case is a wage payment law case about the enforceability of an arbitration clause on that claim. That's all I have for now. Thank you very much. Thank you, counsel. We'll hear from the appellees' counsel. Good morning, Your Honors. May it please the Court. Adelaide Pagano on behalf of plaintiff appellees Erica Richardson and Luis Silva. So as we've just heard, this case presents basically three issues on appeal. And I'd like to just address them each in turn, starting with the question of whether the district court was correct in finding that the arbitration agreement here did not clearly and unmistakably delegate questions of arbitrability. I mean, I guess a place to start is, you know, other courts of appeals, which it seems  circuit, but other circuits have gone against you on this. So it is an open question in this circuit, and it is true that other circuit courts have found that mere incorporation of the AAA rules is sufficient. But I think it's important to note that those cases are generally decided in the context of two commercial entities that negotiated an agreement. And so when they're actively negotiating the agreement, there's some understanding that they understand what those terms are that they negotiated. So you're suggesting there's a separate standard when it's an individual? Well, I think that the Supreme Court has said that this is, you know, that this is grounded in an assumption about the party's expectations, that that's what this interpretive rule of clear and unmistakable means. And expectations of the parties may vary depending on the nature of those parties. So, for example, if it is an individual litigant, a layperson, and particularly if it's an adhesive agreement that they did not actively negotiate, and if it's in a consumer or employment context, I think all of those things are important, and that those do have a bearing on whether the mere reference to this separate 40-page document that's incorporated by reference would really be clear and unmistakable intent that the arbitrator would have this authority to decide these questions. How would you guard against this scenario where somebody, an individual, signs a contract? It includes numerous terms and numerous pages. But then has second thoughts about what he or she has agreed to. Now, all that person has to say is, I am uneducated, I don't understand it, and because of that, and I'm unsophisticated, and therefore this agreement should be voided. How do you – and isn't the better rule to say you sign it, you have to abide by it? Well, I think there's one really easy way to sidestep that issue in this particular instance of the delegation issue, and that is to just include a clear delegation clause in the contract. And here the district court found – The delegation clause would do what? So here the district court found that the Richardson agreement, for example, by contrast, had a specific sentence in there that said, you know, the parties agree that the arbitrator is going to decide issues of validity and scope and so forth. And the court upheld that and said, we're – I'm sending this to the arbitrator because it's clear and unmistakable. There's a clear sentence in there. But there is no sentence like that in Silva's agreement. There's nothing in there to indicate that an arbitrator would decide these questions. And the precedent is clear that the presumption is that a court will decide these questions. Is that part of New Jersey law or the AAA rules? Isn't that written somewhere that the arbitrator will decide arbitrability? So it's in the AAA rules that Rule 7 says that the arbitrator will have the authority to decide these issues. I mean, that's one of many, many rules that are baked into that 40-page document. Well, I mean, is it really sensible to require that such a sentence be in there? Because what about the next case when it's another thing out of the AAA rules? These agreements are going to be unwieldy if every – you know, if everything that's happening in the AAA rules is actually set forth in one of these agreements. Well, I mean, I think the way that the cases have developed from the Supreme Court decision in first options and Renta Center is that if you want to delegate arbitrability, you're free to do that, but you just have to say so and you have to say so clearly. And here in Mr. Silva's agreement, Coverall did not do that. It did not say so. But they do refer to the AAA rules, which in turn incorporates the issue of arbitrability. Yes, but I think in this – if you look at this Court's decision in Chesapeake, Appalachia, it refers to the fact that if you're incorporating by reference this daisy chain of incorporation by reference, that that creates ambiguity as to what the parties actually intended. And I think here, again, I do think the context is relevant. And New Jersey contract law tells us that context is relevant. This Court's decision in Wray-Remicade recently recognized that New Jersey's Supreme Court precedent, that it cares about whether this arises in the consumer context or the employment context, which is the case here. And I think that the incorporation by reference of the AAA rules means something very different to a sophisticated commercial entity that negotiated a contract versus an individual layperson who has handed a lengthy agreement that has one passing reference to AAA commercial rules that then incorporate by reference this other lengthy document, which says that the arbitrator may have the authority to decide these issues, but frankly doesn't even say specifically that the parties intend for the arbitrator to decide these issues. I still think you're making it too easy for someone to say, I just signed a contract and I'm bound by the terms. Oh, by the way, I changed my mind and I'm unsophisticated, so the contract should be void. Well, I think also it's important to note that on this particular issue of delegation, it's the defendant's burden. So, and this Court has characterized that as an onerous burden. So it's their onerous burden to show that there was clear and unmistakable intent to delegate this issue to the arbitrator. And we would submit that they haven't shown that. And I think that the district court's decision is in line with the decisions of a number of other district courts in the Third Circuit, the Fourth Circuit, and the Ninth Circuit that have all followed similar reasoning, and if you look at the decisions You say the reference to the AAA rules is too confusing and that will not be? In the context of an unsophisticated party, exactly. They have said that, you know, it means something different when we're in this consumer employment context with an adhesive agreement and an individual who is being handed this agreement to sign. Who's unsophisticated exactly? How do we define that? Will there be any certainty if we impose something sort of vague like that? So I think that if you look at, for example, the decisions in Stone v. Wells Fargo and Chong v. 7-Eleven, those courts weren't doing some kind of searching inquiry into the factual background of the plaintiff. They were just looking at basic context. Is it in a consumer employment context? Is it an adhesive agreement? Is it an individual who is contracting with a sophisticated commercial party? That kind of basic inquiry is not going to create any kind of administrability problem. For what it's worth here, the district court also did have the benefit of an affidavit from Mr. Silva that did set forth, you know, additional facts about his background, but I don't think that that's necessary. And I – and Cabral here argues that, you know, there should have been.  to do anything that he's not supposed to do in a commercial case? What if he has a Ph.D.? And by the way, he was signing – he purchased a – I think it was a consignment of some sort? A laundry clean business? A franchise, yeah. A franchise, yes. So – I mean, he was – he knew what he was getting into. But he had sufficient smarts to do that, to purchase it and to operate it? So other courts have actually treated franchise agreements more like consumer contracts than commercial ones. That's actually directly from the Meadows v. Dickey's BBQ restaurant case that we cite. And similarly, the Takabine v. 7-Eleven and Chong v. 7-Eleven, those are all cases that arose in a franchise context.  So here we have – I mean, while he might be signing a franchise agreement, effectively he's an individual person who is being handed this lengthy, complex contract by a sophisticated commercial entity, and we're not going to accept that this person understands what it means to incorporate the AAA rules, that somewhere in there, there's a reference to delegating these things to the arbitrator. Suppose we are inclined to incorporate a new test regarding party sophistication. What's your argument then? Because I'm assuming you'll say, well, there still wasn't mutual consent. There still wasn't formation. Do you need that doctrine to prevail? Well, I mean, I think that you would need to find that there was no clear and unmistakable delegation, or alternatively, if you found that there was clear and unmistakable delegation, then you would have to find that the delegation clause is unenforceable for other reasons. We did argue below that the delegation clause was also unconscionable and unenforceable, and the district court did not endorse that reasoning. But I think that – Is that an argument on appeal? We did not file a cross appeal. So I can move on to the question of New Jersey state law. Sure. Go ahead. Okay. So that having found that there was no clear and unmistakable delegation here, the district court went on to consider the validity of the agreement under New Jersey state law, and correctly applied New Jersey Supreme Court precedent in Garfinkel, Martindale, and Adelaide to find that here there was no mutual assent for Mr. Silva to waive his right to proceed in court on his statutory wage claims, and that the contract, because it contains limiting language, limited the claims to contractual claims. There was nothing to indicate to Mr. Silva that it would cover statutory claims or claims related to his employment. And I submit that the district court was correct in this reasoning. Coverall and Stugall have argued that the New Jersey Supreme Court precedent here is preempted by the Federal Arbitration Act. Are those cases what we discussed in our Moon case? Yes. And that's just where I was headed. So I think Moon v. Breathless controls this case. Moon applied those very precedents to a case that is remarkably similar to this case, where there was an independent contractor who had an arbitration agreement, and elsewhere in the agreement it said, You're an independent contractor. But then she was bringing statutory wage claims. And the court there applied Adelies, Garfinkel, and Martindale to find that the statutory wage claims were not covered by the agreement, because the language of the agreement was specific to claims arising under the agreement. And it was basically just no way for her to know that it would be anything other than contractual claims. Moon upheld that the claims didn't arise under the agreement. This relates to arising out of the relationship between the parties. So why do you say Moon controls? Is that a distinguishing fact? So in Moon, the defendant made an argument that's very similar to the argument that Sujil is making here, where they basically argued that Moon's claim that she should be treated as an employee actually does arise under the agreement, because the agreement refers to her as an independent contractor. The idea being, Oh, well, she should have known, because the agreement says she's an independent contractor, that if she's going to bring a misclassification claim, that claim arises under the agreement. No, I agree. But the language here is different. It says it arises out of the relationship. Right? It's a different – what, if any, significance does that phrase have, relationship versus agreement? Well, I think that the reasoning of Moon would still apply, because the court in Moon said that she was bringing these statutory claims despite her agreement stating that she's an independent contractor. And the same is true here. Our plaintiff is bringing these claims despite the fact that he is defined as an independent contractor in the agreement. So in that sense, you know, the fact that the relationship of the parties here is defined as one of an independent contractor, it doesn't really matter, because the claims are being brought despite that language. So it doesn't – it doesn't arise from that relationship or, you know, under that relationship. It's these wage claims are actually brought in spite of that language in the agreement. The district court – I have to go back to the sophistication issue, because I don't understand your position very well. The district court held that the parties or Mr. Silva was unsophisticated. And my question to you is, how do you go about determining the sophistication of an individual for purposes of consenting to an agreement? So, again, I think you can look at sort of background facts that are basically is this person entering this agreement in their individual capacity, or are they like a sophisticated corporate entity? Well, that goes to the issue of sophistication? Yes, I think it does. And I think the other – the other question is adhesion, because if you have two sophisticated entities that are negotiating a contract and they put in a term, there's some – you know, you would expect that they intended that term to be in there, whereas if you're presenting an adhesive contract to someone and asking them to sign it, there is no way to know that they – what they intended by the inclusion of that term. And, frankly, I mean, it's – most individuals are not going to know what the AAA is, much less what the AAA commercial rules say, or that they have, you know, a passing reference in those 40-page separate set of rules, which she was never presented with, that says that the arbitrator would decide this. So it really just can't meet that onerous burden of showing that it's clear and unmistakable. And, again, if Kovaral could just say so, if that's – if Kovaral wanted to delegate these issues to the arbitrator, it could have said so. It did say so in the Richardson agreement, but it didn't say so in the Silva agreement, and it's just taking a big joke too far, as the Allstate Court says, to think that Mr. Silva would actually have any kind of clear and unmistakable intent that the arbitrator would decide this issue when the only indication is this passing reference to the AAA commercial rules. I have a question, and I know Judge Mady does as well, but your adversary mentioned the Morgan, New Jersey Supreme Court case. Your brief mentions it passim. What effect does Morgan have on our analysis here? Well, so I think Morgan underscores that you do need to have clear and unmistakable language indicating delegation. I know that Kovaral notes that there, there were two different sets of rules that could apply and that that somehow introduced more ambiguity. But I don't think that the Morgan court, like, relied on that fact in its holding. Instead, what it relied on was the fact that there was no delegation clause, just like we have here. There was no delegation clause. And the fact that there was, were these rules that were incorporated by reference wasn't enough to get over the hump in Morgan. And I think the same is true here. Is that binding on us in any way? Morgan? Well, so, I mean, the clear and unmistakable standard is something that has come from Supreme Court precedent. Right. That's the point that Justice Patterson made. I think it's been described as a, quote, And so I do think Morgan is an important case here. Okay. Judge Beatty's got a question. Could you talk to us? Thanks. Judge Garris. Okay. Kindred Nursing, the district court found that it wasn't controlling here. But that assumes that the line of New Jersey cases that you're relying on isn't peculiar or particular to the area of arbitration. Because otherwise, Kindred would seem to squarely govern the outcome. So how do you interpret Kindred in this context? So my response to that is twofold. First, Kindred was decided before Moon v. Breckless. So the panel in Moon v. Breckless had the benefit of that decision in Kindred Nursing. And they applied New Jersey state law on this very issue without batting an eye, without having any concerns about preemption. But to answer your question about Kindred Nursing, I think it is clearly distinguishable because there an otherwise valid general power of attorney was still ineffective to enter into an arbitration agreement because you had to have specific authorization to enter into an arbitration agreement. And moreover there, it was a brand new law that the Kentucky Supreme Court had kind of just come up with. They had never before required such specific authority to enter into contracts implicating constitutional rights. By contrast, Attlees makes clear that the rule that we're talking about here is one that has been part of New Jersey contract law for decades. And it has been applied to all different types of contracts and to all different types of statutory and constitutional rights. It is not arbitration specific. There is nothing here that requires something specific of arbitration agreements that is not required of any other type of contract. Basically, all that this rule from Attlees says is that if you want someone to waive their statutory rights, you have to draft it clearly. I mean, that's what it really boils down to. There has to be some indication that the contract is meant to cover the statutory right in question and there has to be some understanding that they're giving it up. All right, counsel, I see your time is up. Thank you. Thank you. Your Honor, there's a couple of quick points I wanted to make. Counsel made the statement that this Court was aware of the Kindred decision when it decided Moon and nonetheless had no problems applying the test that the New Jersey Supreme Court had put forth. Preemption did not come up in Moon. This Court has noted the preemption possibility before, but it has never addressed the issue head-on. So that's not authority for that proposition. I want to just quickly clear up what counsel said about the clear and unmistakable test and the assertion that it's an assumption about the parties' expectations. That's not what the Supreme Court has said. In Renta Center, the Supreme Court said very clearly that the clear and unmistakable test pertains to the manifestation of intent. And under New Jersey law, that is an objective test. And I think it's notable that in the Garfinkel case... To the intent to arbitrate. Is that accurate? Correct, Your Honor. By signing an agreement, you have manifested an intent to arbitrate. The concept of sophistication came up in the Garfinkel case. The defendant actually argued that the Court should take a look at the plaintiff's sophistication in determining whether or not he had evidence and intent to arbitrate his discrimination claim. And Garfinkel said that's a mistaken way of looking at it. You take a look at the language that the parties used in their contract. That's exactly what we're saying here. This is not a daisy chain issue, as in Chesapeake. In Chesapeake, Your Honor, there was no specific set of rules specified, and you had to go from some unspecified set of rules to a supplementary set of rules on class arbitration to find some intent to delegate class arbitration issues to an arbitrator. That's not the case here. We have a specified set of rules, the AAA rules. They clearly and unmistakably delegate arbitrability questions to an arbitrator, and every circuit court in the country that has addressed the issue has said that's enough. You don't need to set them forth in full. If you needed to set them forth in full, one circuit court would have said that, yet none said that. Thank you, counsel. Thank you, Your Honor. Very briefly, looking at Mr. Silva's arguments, if you're looking at this from the perspective of an unsophisticated reader, the reference to discrimination in an arbitration clause would be more sufficient than referencing, for instance, 42 U.S.C. 2000E, which is Title VII. But under Silva's argument, the reference to the specific statute is sufficient, and the reference to general language like discrimination or the relationship of the parties here, which incorporates independent contractor status, is not sufficient. And that's just not the principle of the New Jersey cases. The principle is what would a reasonable person, a fair-minded person, understand themselves to be giving up. Thank you. Thank you, counsel.